UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALBERTO GUZMAN,

                Petitioner,

vs.                              Case No.  2:08-cv-411-FtM-36SPC

SECRETARY,   DEPARTMENT    OF
CORRECTIONS and ATTORNEY GENERAL
STATE OF FLORIDA,

                Respondents.
_____/

## OPINION AND ORDER

### I. Status

Petitioner  Alberto  Guzman  (hereinafter  "Petitioner"  or
"Guzman")  initiated  this  action  by  filing  a  *pro se*  Petition  for
Writ  of  Habeas  Corpus  ("Petition,"  Doc.  #1)  pursuant  to  28  U.S.C.
§  2254  on  April  27,  2008.[1]   The  Petition  challenges  Petitioner's
April  14,  2003,  judgment  of  conviction  for  second  degree  murder
with  a  firearm  entered  in  the  Twentieth  Judicial  Circuit  Court,
Hendry  County,  Florida  (case  number  H00-184-CF)  for  which  he  is
serving  a  life  sentence.   Petition  at  1.[2]   Petitioner's  sentence

---

[1] The  Petition  was  filed  in  this  Court  on  April  29,  2008;
however,  the  Court  applies  the  "mailbox  rule"  and  deems  a  petition
"filed  on  the  date  it  is  delivered  to  prison  authorities  for
mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir.
2009).

[2] The  page  numbers  referenced  within  this  Order,  other  than  to
the  page  number  referenced  in  the  Exhibits,  are  to  the  page  of  the
identified  document  as  it  appears  on  the  Court's  case  management
electronic  computer  filing  system.   Exhibits  are  available  in  paper
(continued...)

and conviction were *per curiam* affirmed on direct appeal.[3] *Guzman v. State*, Case No. 2D03-2344 (2d DCA 2004); Exh. 3.

The Petition raises the following fourteen grounds (restated)[4] for relief:

> 1.   Trial counsel was ineffective for failing to seek his removal from the case;
>
> 2.   Trial counsel was ineffective for failing to remove a juror who claimed he could not be fair to Petitioner;
>
> 3.   Trial counsel was ineffective for failing to remove a juror who said police do not lie;

---

[2](...continued) format only.

[3]To the extent relevant, the Court will address the other post conviction motions filed by Petitioner at the time the Court discusses each of the grounds asserted herein for relief.

[4]The Petition does not clearly set forth each of the enumerated claims. *See generally* Petition. Instead, the Petition identifies at least 9 ineffective assistance of trial counsel claims in a rambling fashion together under "Ground One" in his Petition. *Id.* at 4-5. Petitioner then appears to identify two separate claims of appellate counsel's ineffectiveness in "Ground Two" of his Petition, *Id.* at 6, and a virtually similar claim of appellate counsel's ineffectiveness in "Ground Three" of his Petition. *Id.* at 8. Finally, in "Ground Four" of the Petition, Petitioner raises a Sixth Amendment claim, but fails to identify whether the claim is based upon trial court error or ineffectiveness of trial counsel. After thoroughly reviewing the Petition, and Petitioner's post-conviction pleadings, the Court agrees that the 13 enumerated claims identified by Respondent are the only claims arguably exhausted by Petitioner. It appears, however, that Petitioner raises an additional claim of trial counsel's alleged ineffectiveness in his Petition that was not addressed by Respondent - - whether trial counsel was ineffective for failing to object to improper comments by the prosecutor during closing argument. In an abundance of caution, and in light of *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992), the Court *sua sponte* will address this additional claim as ground 14. *See* Petition at 5.

4. Trial counsel was ineffective for failing to remove a juror who had a daughter employed in the State Attorney's Office;

5. Trial counsel was ineffective for failing to investigate a self defense theory;

6. Trial counsel was ineffective for failing to request that the jury be instructed on penalties/elements of the crime pursuant to *Apprendi* and *Blakey*;

7. Trial counsel was ineffective for failing to object to the trial court's misstatement of the law that sentencing was a consideration for the court only, not the jury;

8. Trial counsel was ineffective for failing to object to the State's request for a departure sentence of life under the 10-20-life statute;

9. Cumulative error;

10. Ineffective assistance of appellate counsel for failing to argue on direct appeal that the trial court erred in failing to discharge court-appointed counsel based upon a clear conflict of interest;

11. Ineffective assistance of appellate counsel for failing to argue on direct appeal that the trial court erred in failing to conduct a *Faretta* inquiry to determine that Petitioner could represent himself at trial;

12. Ineffective assistance of appellate counsel for failing to argue that Petitioner was denied the right to represent himself;

13. Violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), where Petitioner was sentenced to a life sentence without a jury finding that Petitioner used a firearm; and,

14. Trial counsel was ineffective for failing to object to improper comments made by the prosecutor in closing argument.

*See generally* Petition.

Respondent filed a Response to the Petition and addressed grounds 1-13 identified above (Doc. #13, Response). Respondent moves for summary judgment based upon Petitioner's failure to satisfy his burden under 28 U.S.C. § 2254(d) and (e). Response at 1. Respondent filed exhibits (Exhs. 1-21) in support of the Response, including the two-volume record on direct appeal (Exh 21, Vols. I-II.). Petitioner failed to file a reply to the Response, although twice directed to do so by the Court. *See* Docs. #9, #16. Consequently, the Court deems this matter ripe for review without the benefit of a reply from Petitioner.

## II.  Applicable § 2254 Law

Guzman filed his timely[5] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1664 (2007); *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Davis v. Jones*, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, a federal court's standard of review "is greatly circumscribed and is highly deferential to the state courts." *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193,

---

[5]Respondent does not address whether the Petition is timely filed within the one-year federal limitations period set forth in 28 U.S.C. Section 2244(d). *See generally* Response. The Court independently has determined that, based upon the record of Guzman's State post-conviction filings, the Petition is timely filed.

1208 (11th Cir. 2007)(internal quotations and citations omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 787 (2011)(internal quotations and citations omitted)(emphasizing "[f]ederal habeas review of state conviction frustrates both the State's sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."). Consequently, the Court applies the following principles of law in evaluating the claims set forth in the instant Petition.

### A.   Exhaustion and Procedural Default

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.   28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted.) This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to

the state courts. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'"). Additionally, in articulating a factual basis in support of a claim for relief, a petitioner must have also alleged the factual predicate to the state court. *Kelley v. Sec'y for Dep't of Corrs.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004)(noting that petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition if they did not first raise them in the state courts).

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner

has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Mize v. Hall*, 532 F.3d at 1190.  Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *House v. Bell,* 547 U.S. 518, 536 (2006); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

**B.  Deference to State Court Decision**

Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." *Id.* (internal quotations and citations omitted). *See also Harrington v. Richter*, 131 S. Ct. at 786 (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." *Childers v. Floyd*, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. *Id; See also*, *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." *Childers v. Floyd*, 642 F.3d at 969 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." *Thaler v. Haynes*, ___ U.S. ___, 130 S .Ct. 1171, 1173 (2010); *see also Carey v. Musladin*, 549 U.S. 70,

74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).

"[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward*, 591 F.3d at 1155 (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520).

The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77

(2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.   Further, the Supreme Court has recently held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen,* 131 S. Ct. at 1398.  Thus, the Court is limited to reviewing only the record that was before the state  court at the time it rendered its order.  *Id*.

### C.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  *Newland*, 527 F.3d at 1184.  In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*, 558 U.S. ___, 130 S. Ct. 13, 16 (2009).   Thus, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Knowles v. Mirzayanze*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, at 694.   That requires a "substantial," not just "conceivable," likelihood of a different result.   *Harrington,* 131 S. Ct. at 791.

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.   *Id.*   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable

professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

"In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Eagle*, 279 F.3d 926, 940 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). The reasonableness of counsel's assistance is reviewed in light of both the facts and law that

existed at the time of the challenged conduct. *Chateloin v. Singletary*, 89 F.3d 749, 753 (11th Cir. 1996).

### D. Ineffective Assistance of Appellate Counsel

The *Strickland* standard also governs claims asserting ineffective assistance of appellate counsel. To determine whether Petitioner was prejudiced by his appellate attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)), *cert. denied*, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001)(citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. *Schriro v. Landrigan*, 550 U.S. 465, 474-475 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, *Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts

of the case are fully developed in the record before the Court. *Schriro*, 550 U.S. at 475.

At the outset, Petitioner provides no facts in support of any of the grounds for relief raised in his Petition. Consequently, the Court shall construe each of the grounds only to the extent Petitioner raised the ground for relief in his post conviction motion and the appeal from the denial therefrom.

**Ground 1**

In Ground 1, Petitioner contends that his trial counsel, Assistant Public Defender Richard Sullivan ("Sullivan"), provided ineffective assistance to him in violation of his 6th Amendment rights because he failed to request to be removed as counsel due to a "conflict of interest." Petition at 4. Petitioner does not identify the type of conflict of interest. *Id*.

In Petitioner's *pro se* Rule 3.850 motion, Petitioner claimed that trial counsel was ineffective for failing "to seek withdrawal or remove himself after a serious conflict of interest developed between defendant and the attorney, a long time prior to trial starting [sic]." Exh. 11 at 4 (ground one).

The post conviction court denied this claim, finding as follows:

> In ground one, Defendant alleges that counsel was ineffective for failing "to seek withdrawal or remove himself after a serious conflict of interest developed between Defendant and the Attorney a long time prior to trial." In support of his claim, Defendant states that his "primary complaint in this issue is that he was forced to have trial with counsel he did not want." He

-14-

also argues that prior to trial he informed counsel that "he ought to remove himself because, if not, then Defendant would write to ask the judge to do such."  Two weeks prior to trial, "a hearing was held to determine if counsel should be allowed to withdraw from the case," but the trial court denied withdrawal.

The record reflects that counsel filed a "Motion to Withdraw" on January 24, 2003 at Defendant's request. See attached copy of Motion to Withdraw.  At the hearing on the Motion, Defendant was given the opportunity to directly address the trial court with his concerns regarding counsel's representation.  He informed the trial court that he had "no confidence" in counsel and that counsel "don't got no confidence in himself." Citing *Tucker v. State*, 754 So. 2d 89 (Fla. 2d DCA 2000), the trial court found that a defendant's "general loss of confidence or trust . . . does not require withdrawal of counsel."  See attached copy of transcript of hearing on Motion to Withdraw.

Contrary to Defendant's claim, the record reflects that trial counsel did seek to withdraw in accordance with Defendant's request by filing a motion to withdraw.  The trial court properly denied the motion after a hearing because the defendant only alleged a general loss of confidence in counsel.  Counsel cannot be deemed ineffective for failing to prevail on an issue raised and properly rejected by the trial court.  *Spencer v. State*, 842 So. 2d 52 (Fla. 2003).  Therefore, because the record conclusively refutes Defendant's claim, ground one is denied.

Exh. 13 at pp. 2-3.  The appellate court *per curiam* affirmed the

trial court's denial of this claim.  Exh. 17; *Brown v. State*, 987

So.2d 1216 (Fla. 2d DCA 2008).  Thus, the State court's decision on

this claim warrants deference under AEDPA.

Here, the State court found that Petitioner's claim was

conclusively refuted by the record.  Indeed, the record reveals

that on January 24, 2003, a hearing was held before the Honorable

G. Keith Cary, the circuit judge who was presiding over

Petitioner's criminal case.  Exh. 20.   At the inception of the hearing, Petitioner's counsel, Mr. Sullivan, stated "Mr. Guzman asked me to file a motion to withdraw as his counsel in the case." *Id.* at 3.   Mr. Guzman explained that he has "fired" his first counsel, Assistant Public Defender Mr. Joe Rinella, and wanted his second counsel "discharged."  *Id.* at 4.[6]  Guzman explained that the reason he wanted to have counsel discharged is that he lost confidence in his attorney.  *Id.* at 6-9.  Mr. Sullivan explained to the trial court that Guzman was referring to their discussion about Sullivan's opinions of how "the case might actually go at trial" -- *i.e.* "his chances at trial."  *Id.* at 6.  Essentially, Guzman did not like counsel's assessment of his case.   Based upon the testimony at the hearing, the trial court denied Sullivan's motion to withdraw, finding no facts to support the existence of a conflict of interest.  *Id.* at 12-13.

As noted above, Petitioner does not provide any explanation as to how the State court's decision on this claim was contrary to or involved an unreasonable application of clearly established law, or was based on an unreasonable determination of the facts, and the Court finds no grounds otherwise.   Indeed, the post conviction

---

[6]The record reveals that Mr. Rinella also filed a motion to withdraw at Petitioner's request but the court determined no legal grounds existed to grant the motion. The Public Defender's Office nonetheless agreed with the court's suggestion to reassign the case to a different lawyer within the office who could "better communicate with Mr. Guzman."  *Id.* at 5-6.

court correctly cited to *Strickland's* two-prong test as the controlling federal precedent for evaluating each of Petitioner's ineffective assistance of counsel claims.  Exh. 13 at 1-2, ¶2. Further, the record unequivocally evidences that trial counsel filed a motion to withdraw contrary to Petitioner's assertion.  *See* Exh. 12, Exh. B.  Consequently, the Court finds that Ground 1 is without merit because the factual underpinnings of the claim are disputed by the record.

### **Grounds 2, 3, and 4**

Petitioner faults trial counsel for failing to seek the removal of: "a juror who claimed he could not be fair," "another juror [who] said police do not lie," and "a third juror [who] had a daughter employed in the state attorney's office."  Petition at 4.  Because each of these Grounds involve allegations that counsel failed to object to allegedly biased jurors, the Court will address these Grounds together.  Again, Petitioner provides no additional facts in support of any of these Grounds for relief in the instant Petition.  Petitioner raised each of these claims in his Rule 3.850 motion.  Exh. 11 at 7-10 (ground 2, 3 and 4).

The post conviction court, in denying each of Petitioner's claims concerning counsel's failure to seek removal of the allegedly biased jurors, in relevant part, found:

> Defendant alleges in ground two that counsel was
> ineffective for "failing to remove a juror named Marion
> Sparks from being on the jury panel, after this person
> indicated during voir dire that he could not be fair or

impartial to Defendant." Specifically, Defendant claims
that Mr. Sparks was "a presumptively bias juror" because
during voir dire Mr. Sparks stated (a) he was a former
"auxiliary police officer for the Lewiston Police
Department;" (b) he "knew a couple of states' witnesses
in this case," including Investigator John Brannaman and
Deputy Robert Feilder, both of the Hendry County
Sheriff's Department; and (c) he knew one of the
alternate jurors, Glen Pridgen because his daughter was
married to Mr. Pridgen's son.

In *Jenkins v. State*, 824 So. 2d 977, (Fla. 4th DCA 2002),
the defendant filed a rule 3.850 motion for
postconviction relief alleging that defense counsel was
ineffective for failing to strike a juror after the juror
stated during voir dire that he would be fair and
impartial, but that he tended to give police officers'
testimony a little more weight. *Id.* In upholding the
summary denial of the claim, the Fourth District held
that "[b]ecause a defendant must demonstrate prejudice in
a 3.850 proceeding, post-conviction relief based on a
lawyer's incompetence with regard to the composition of
the jury is reserved for a narrow class of cases where
prejudice is apparent from the record, where a biased
juror actually served on the jury." *Id.* at 982.
Furthermore, "if a lawyer's 'error' regarding a juror's
qualifications is not so serious as to be the equivalent
of fundamental error, then post-conviction relief is not
appropriate." *Id.* at 983.

The record reflects that Mr. Sparks stated during voir
dire that in the 1970s he was an "auxiliary police
officer for the Clewiston Police Department." See
attached copy of trial transcript, volume I, pages 53-54.
[footnote omitted] He also stated that he knew two of the
state's witnesses, Investigator John Brannaman and Deputy
Robert Feilder. See attached copy of trial transcript,
volume I, page 45. When asked whether he believed that
the testimony of Investigator Brannaman and Deputy
Fielder might be more credible than the other witnesses
in the case, Mr. Sparks answered no. See attached copy
of trial transcript, volume I, page 47. He also stated
that he could fairly judge their testimony just like he
would any other witness and that police officer[s] do not
have more credibility to him. See attached copy of trial
transcript, volume I, pages 47, 59. It was also made
clear during voir dire that Mr. Pridgen's son was married
to Mr. Sparks' daughter. However, Mr. Sparks stated it

-18-

would not be a problem working with Mr. Pridgen.   See attached copy of trial transcript, volume I, pages 83-84. The Court finds that the record does not reflect any bias on Mr. Sparks' part and prejudice is not apparent from the record.   Therefore, in accordance with Jenkins, 824 So. 2d 977, post conviction relief is not appropriate and ground two is denied.

Defendant alleges in ground three that counsel was ineffective for failing to "seek removal of a juror named Ms. Ernestine Saunders" after she stated that a police officer should not lie and that there was a special significance to somebody being a police officer. Defendant claims that his defense was prejudiced by having Ms. Saunders serve on his jury because she "would believe anything a police officer said."

The record reflects that when asked by the prosecutor during voir dire whether she would give a uniformed officer's testimony more credibility than another person's, Ms. Saunders stated "I hope that because he is an officer he is going to be truthful."   See attached copy of trial transcript, volume I, page 41.   Ms. Saunders also indicated that she hoped all witnesses would be truthful, but recognized that any witness could have a motive to not tell the truth.   See attached copy of trial transcript, volume I, pages 4 2-43.   When questioned by defense counsel during voir dire, Ms. Saunders reiterated that a uniformed officer is not necessarily more credible than another witness, adding "just because they are an officer, for me whether I think he is telling the truth or not . . . I just have to use my judgment, just as if it was a regular person."   See attached copy of trial transcript, volume I, pages 57-59. The Court finds that the record does not reflect any bias on Ms. Saunders' part and prejudice is not apparent from the record.   Therefore, in accordance with *Jenkins*, 824 So. 2d 977, post conviction relief is not appropriate and ground three is denied.

According to ground four, counsel was ineffective for failing to seek the removal of Mr. Gary Steigert from the jury panel after he stated that his daughter-in-law worked for the State Attorney's Office.   Defendant alleges that, even though Mr. Steigert said he did not know the particular prosecutor at trial, "that did not mean he did not know other state prosecutors or would be able to make a fair judgment."

-19-

The record reflects that Mr. Steiger stated during voir dire that his daughter-in-law worked for the State Attorney's Office, but did not indicate in what capacity. He further stated that he only saw his daughter-in-law about once a month and did not know the prosecutor or recognize Defendant's name.  See attached copy of trial transcript volume I, pages 26-27.  The Court finds that the record does not reflect any bias on Mr. Steigert's part and prejudice is not apparent from the record. Therefore, in accordance with *Jenkins*, 824 So. 2d 977, post conviction relief is not appropriate and ground four is denied.

Exh. 13 at 3-6.  The appellate court *per curiam* affirmed the trial court's denial of this claim.  Exh. 17.  Thus, the State court's decision on this claim warrants deference under AEDPA.

As noted above, the post conviction court evaluated each of Petitioner's ineffective assistance of counsel claims under the *Strickland* standard.  Exh. 13 at 1-2, ¶ 2.  Clearly, Petitioner is entitled to an impartial jury.  *Turner v. Murray,* 476 U.S. 28, 36 n. 9 (1986) ("The right to an impartial jury is guaranteed by both the Sixth Amendment . . . and by principles of due process."). Nonetheless, the post conviction court's ruling is consistent with Supreme Court precedent.  In order to prevail on his ineffective assistance of counsel claim,  Petitioner first must demonstrate that one of these challenged jurors was actually biased against him.[7]  *See Smith v. Phillips,* 455 U.S. 209, 215 (1981).

---

[7]In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. State,* 28 So.3d 838, 859
(continued...)

In the instant matter, any allegation of bias is refuted by the *voir dire* of each of the venire member's fitness for jury service. *See generally* Exh. 21, Vol I.  Mr. Steiger admitted that his daughter-in-law worked at the State Attorney's Office but he did not know the prosecutor, and he only sees his daughter-in-law maybe "once a month." *Id*. at 26.  Although Ms. Saunders initially stated that she hoped that a police officer would be truthful, she eventually acknowledged that "simply because a person is a police officer" does not mean "he's going to tell the truth or not tell the truth." *Id*. at 43.  In response to questioning by defense counsel, Mr. Sparks expressly denied that just because he knew certain police officers that he did not "feel that their testimony would be more credible." *Id*. at 47.  Instead, Mr. Sparks agreed that he would "judge their testimony just like [he] would any other witness." *Id*.  Further, Mr. Sparks admitted that he was previously an "auxiliary police officer" but acknowledged that it was "back in the 70s" and he no longer volunteered or even knew who was the current chief of police. *Id*. at 54.

---

[7](...continued)
(Fla. 2009) (citing *Lusk v. State,* 446 So.2d 1038, 1041 (Fla. 1984)). *See also, Irvin v. Dowd,* 366 U.S. 717, 723 (1961) ("[T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

Petitioner's characterization of the challenged jurors' testimony is refuted by the record. Instead, the record of *voir dire* testimony reveals that none of the challenged jurors were openly biased. "It is sufficient if the jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court." *Skillings v. U.S*, ___ U.S. ___, 131 S. Ct. 2896, 2925(2010)(internal quotations and citations omitted). Here, each of the challenged jurors agreed to do that. *See generally* Exh. 21, Vol. I. Consequently, the Court finds that Petitioner has failed to sustain his burden under § 2254 and denies Grounds, 2, 3 and 4 as without merit.

**Ground 5**

Petitioner claims that trial counsel was ineffective for failing to investigate a self-defense theory on Petitioner's behalf. Petition at 4. Petitioner also claims, however, that the victim's death "was purely an accident." *Id*. The Petition is otherwise devoid of any facts in support of Petitioner's theories that he acted in self-defense or that the shooting was accidental. *See generally Id*. Petitioner raised a similar claim in his Rule 3.850 motion. Exh. 11 at 11 (ground five). The post conviction court summarily denied Petitioner's claim of counsel's ineffectiveness for failing to advance theories of self-defense or accidental shooting as follows:

> Defendant alleges in ground five that counsel was
> ineffective for failing to investigate a self-defense

theory.  Defendant claims he agreed to meet the victim, his childhood friend, in order to sell the victim some marijuana.  At the meeting, the victim picked up some baggies of marijuana and started to back away, as though he were going to steal the marijuana.  Defendant, concerned the victim was going to run away, told him to stop.  When the victim refused, Defendant pulled out a gun in order to "scare" him.  The victim reached into his pants as though "going for a gun."  Defendant then pointed his gun at the victim and it accidentally discharged.  The victim fell to the ground, got up and ran down an embankment. Defendant then fired a "few shots" down the embankment to scare the victim into staying there long enough to give Defendant the chance to leave.  Notably, Defendant does not allege in ground five any specific actions he believed counsel could have done in order to investigate a self-defense theory.

The record reflects that Defendant testified at trial that the victim "grabbed the marijuana and he took a step back and I felt a vibe as if he was going to strike me and I reacted."  When asked what he thought the victim was going to do, Defendant clarified that he felt the victim was going to hit him.  He then stated, "I reacted out of fear and I reached for the gun and pulled it out and I fired the gun."  When asked if there was anything else he wanted the jury to know about the incident, Defendant stated that he did not intend to harm the victim, but reacted out of fear.  See attached copy of trial transcript, volume III, pages 169-171.  Thus, Defendant testified at trial that he was afraid the victim might hit him, but he never stated that he was afraid the victim might have a gun as alleged in his Motion.

In addition, it appears that after his arrest, Defendant accompanied law enforcement authorities to the scene of the crime in order to conduct a re-enactment of the crime.  A videotape of the re-enactment was introduced into evidence and played for the jury at trial.  See attached copy of trial transcript, volume III, pages 118-.  According to the trial transcript, Defendant stated on the video that the victim put his hands in his pocket, pulled them out, grabbed the drugs and took off running.  See attached copy of trial transcript, volume 111, page 123.  Defendant then stated, "[r]ight when he did that then [inaudible] I pulled a gun quick and I shot one time."  See attached copy of trial transcript, volume

> III, page 124.  "[H]e was acting like he was hurt but he
> was taking off with my [drugs]."  See attached copy of
> trial transcript, volume III, page 124.  Defendant then
> stated that as the victim fled, he continued shooting at
> him until he ran out of bullets "because I know he still
> got my dope."  See attached copy of trial transcript,
> volume III, page 124.  Thus, in the video re-enactment,
> Defendant did not allege that he feared the victim might
> have a gun or that the victim might hit him.  Finally,
> the Court notes that a review of the entire trial
> transcript reflects that there were no witnesses to the
> shooting other than Defendant.  The Court finds that
> there was no available evidence other than Defendant's
> testimony, with which to establish a claim of
> self-defense and counsel did, in fact, present
> Defendant's testimony to the jury at trial.  Under the
> specific facts of this case, the Court finds as a matter
> of law that counsel's performance was not deficient
> within the meaning of *Strickland*, 466 U.S. 668 and ground
> five is denied.

Exh. 13 at 6-7.

The appellate court *per curiam* affirmed the trial court's denial of this claim.  Exh. 17.  Thus, the State court's decision on this claim warrants deference under AEDPA.

Florida law requires that a defendant alleging self-defense demonstrate "a real necessity for taking a life and a situation causing a reasonably prudent person to believe that danger is imminent."  *Hunter v. State,* 687 So.2d 277, 278 (Fla. 5th DCA 1997). *See also Pressley v. State,* 395 So.2d 1175, 1177 (Fla. 3d DCA 1981).  Thus, a person may use deadly force in self-defense if he or she reasonably believes such force is necessary to prevent imminent death or great bodily harm.  A person may not, however, use deadly force without using every available means to avoid

danger, including retreat. *See Weiand v. State,* 732 So.2d 1044, 1049 (Fla. 1999).

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  In reviewing a claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.  The Supreme Court recognized that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Id*. at 691.  Indeed, counsel does not have an absolute duty to investigate a particular defense. *Fugate v. Head,* 261 F.3d 1206, 1217 (11th Cir. 2001)(citing *Chandler*).  Based on Florida law, Petitioner did not articulate a factual basis for counsel to either investigate or advance a theory of self-defense.  Thus, the Court finds that the State court's denial of this claim was not contrary to clearly established federal law, was not an unreasonable application of clearly established federal law, or was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Consequently, the Court denies Ground 5 as without merit.

**Grounds 6 and 7**

As his sixth ground for relief, Petitioner faults trial counsel for failing to request a jury instruction concerning the "probable penalties" as required by "*Apprendi* and *Blakey*."[8] Petition at 5. As his seventh ground for relief, Petitioner assigned error to trial counsel for "failing to object to [the] judge's misstatement of the law where he told the jury their job was not to consider sentence to be imposed," stating that this function was for the court. *Id*. No other facts are provided in support of either claim. *See generally Id*.

Petitioner raised both of these claims in his Rule 3.850 motion as grounds eight and ten respectively. Exh. 11 at 15-16, and 19-20. The post conviction court denied Petitioner relief on both grounds, finding in pertinent part:

> Defendant alleges in ground eight that counsel was ineffective for failing to request that "the jury be told what penalties could be imposed for a finding of guilt on the second degree murder charge, as well as [manslaughter]." However, Florida Rule of Criminal Procedure 3.390 (a) specifically states that "[e]xcept in capital cases, the judge shall not instruct the jury on the sentence that may be imposed for the offense for which the accused is on trial." Counsel cannot be deemed ineffective for failing to raise a meritless objection. Accordingly, ground eight is denied on the merits.
>
> Defendant alleges in ground ten that, counsel was ineffective for failing to object "when the judge announced his intention to answer a jury question about the sentences Defendant could receive for either second

---

[8]*Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Blakey v. Washington*, 542 U.S. 296 (2004).

degree murder or manslaughter."  Defendant argues that, in response to the jury's question, the judge informed them that "it is your duty to determine if the defendant has been proved guilty or not guilty in accord with the law, it is the judge's duty to determine a proper sentence if defendant is found guilty." However, as previously noted in the discussion of ground eight, Florida Rule of Criminal Procedure 3.390(a) specifically states that "[e]xcept in capital cases, the judge shall not instruct the jury on the sentence that may be imposed for the offense for which the accused is on trial." Counsel cannot be deemed ineffective for failing to raise a meritless objection. Accordingly, ground ten is denied on the merits.

Exh. 13 at 8-9.

The appellate court *per curiam* affirmed the trial court's denial of this claim.  Exh. 17.  Thus, the State court's decision on this claim warrants deference under AEDPA.

The Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  In *Blakely*, the Supreme Court clarified that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury's verdict or as admitted by the defendant.  542 U.S. at 303-05.

Neither *Apprendi* nor *Blakely* stand for the proposition suggested by Petitioner - - that the jury must determine a defendant's penalty.  Instead, the jury must find beyond a reasonable doubt each factual element that increases a penalty for a crime.  Here, the verdict returned by the jury found Petitioner

guilty of "Second Degree Murder With a Firearm."  Exh, 21, Vol. I at 17.  Florida law requires "that the jury need only be instructed as to the possible penalty when it is faced with the choice of recommending either the death penalty or life imprisonment." *Nixon v. State*, 572 So.2d 1336, 1345 (Fla. 1990).  Because Guzman did not face a potential death sentence if convicted, Petitioner fails to establish that the State post conviction court's decision was contrary to clearly established federal law, or was an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, the Court finds both Grounds 6 and 7 to be without merit.

**Ground 8**

Petitioner claims trial counsel was ineffective because counsel failed to object to the State's request for a departure sentence of life under Florida's 10-20-life statute.  Petition at 5.  Petitioner argues that the jury would have been required to find "guilt[y] with the use of a firearm," but claims "the jury made no such finding."  *Id*.

Petitioner raised this claim in his Rule 3.850 motion as ground eleven.  Exh. 11 at 20-21.  The post conviction court denied Petitioner relief as follows:

> In ground eleven, Defendant alleges that counsel was
> ineffective at the sentencing hearing for failing to
> object and argue against the State's recommendation of a
> life sentence under the 10-20-Life statute because the

-28-

> "special jury verdict form did not show Defendant
> committed his crime by shooting with a firearm."
> However, the verdict form reflects that the jury found
> Defendant "guilty of SECOND DEGREE MURDER WITH A
> FIREARM." See attached copy of verdict form.
> Accordingly, the record conclusively refutes Defendant's
> factual allegations. Because counsel cannot be deemed
> ineffective for failing to raise a meritless issue,
> ground eleven is denied.

Exh. 13 at 9-10.

The appellate court *per curiam* affirmed the trial court's

denial of this claim. Exh. 17. Thus, the State court's decision

on this claim warrants deference under AEDPA.

Here, the verdict form is determinative of Petitioner's claim.

Exh. 21, Vol. I at 17. The Court finds that the record

conclusively refutes Petitioner's factual allegations. The jury

was asked to render their verdict by checking only one of the

following four options:

(a) The defendant is guilty of SECOND DEGREE MURDER WITH A FIREARM
(b) The defendant is guilty of SECOND DEGREE MURDER
(c) The defendant is guilty of MANSLAUGHTER
(d) The defendant is not guilty.

*Id*. If the jury determined that Petitioner was guilty of SECOND

DEGREE MURDER or MANSLAUGHTER (options "b" or "c" above), then the

jury was then required to determine whether the defendant

"committed the crime by shooting a firearm." *Id*. The jury found,

beyond a reasonable doubt, that Petitioner was guilty of option "a"

- - SECOND DEGREE MURDER WITH A FIREARM. *Id*. Thus, the jury had

no reason to consider the second question - - whether Petitioner

"committed the crime by shooting a firearm."  The record refutes Petitioner's factual allegations in support of his claim.

Based on the foregoing, the Court finds that the State post conviction court's decision was not contrary to clearly established federal law, or was not an unreasonable application of clearly established federal law, or was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Consequently, Ground 8 is denied as without merit.

**Ground 9**

Petitioner argues that trial counsel's "cumulative errors" prejudiced his right to a fair trial.  Petition at 5.  Presumably, Petitioner refers to Grounds 1-8 previously discussed.

Petitioner raised a cumulative error claim in his Rule 3.850 motion as ground thirteen.  Exh. 13 at 24.  The post conviction court denied this claim based on the absence of any individual errors by trial counsel, finding:

> Finally, Defendant alleges in ground thirteen that counsel's "cumulative errors" prejudiced his rights to a fair trial and due process.  Pursuant to *Wright v. State*, 857 So. 2d 861 (Fla. 2003), a post conviction claim of cumulative error is without merit where the court has considered each individual claim and found them to be without merit.  Therefore, having found that each claim presented in Defendant's Motion lacks merit, the Court finds no cumulative error occurred and ground thirteen is denied.

Exh. 13 at 11.

The appellate court *per curiam* affirmed the trial court's denial of this claim. Exh. 17. Thus, the State court's decision on this claim warrants deference under AEDPA.

No Supreme Court authority recognizes ineffective assistance of counsel "cumulative error" as a separate violation of the Constitution, or as a separate ground for habeas relief. *See Lorraine v. Chyle*, 9 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003); *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009), *cert. denied,* ___ U.S. ___, 129 S. Ct. 932 (2009). The Supreme Court has stated that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *U.S. v. Cronic*, 466 U.S. 648, 659, fn. 26 (1984). Further, in *Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003), the court stated, "[b]ecause the sum of various zeroes remains zero, the claimed prejudicial effect of their trial attorneys' cumulative errors does not warrant habeas relief."

This Court also previously engaged in a claim by claim analysis set forth in Grounds 1-8 and ultimately found each to be without merit. Consequently, Petitioner has not met his burden under § 2254, and this Ground is denied as without merit.

**Ground 10, 11 and 12**

Petitioner raises three grounds of ineffective assistance of appellate counsel. First, Petitioner assigns error to appellate counsel for failing to argue on direct appeal that the trial court erred in failing to discharge his court-appointed counsel, Mr. Sullivan, "based upon a clear conflict of interest." Petition at 6. Second, Petitioner faults appellate counsel for failing to claim the trial court erred in not conducting a *Faretta*[9] inquiry to determine that "Petitioner could represent himself." *Id*. Third, Petitioner claims ineffectiveness by appellate counsel for failing to raise on direct appeal that Petitioner had "a right to self-representation." *Id*. at 8.

On May 25, 2005, Petitioner delivered to correctional officials a State petition for writ of habeas corpus. Exh. 5. The May 25 petition alleged counsel on direct appeal was ineffective on two grounds: (1) failing to raise on direct appeal that the trial court erred by failing to conduct an adequate *Nelson* and *Faretta* inquiry; and (2) failing to request supplementation of the record as it pertains to Petitioner's *Nelson*[10] and *Faretta* claims. *Id*. at 3. On September 14, 2005, the State appellate court denied Petitioner's May 25 petition without opinion. Exh. 6.

_____

[9]*Faretta v. California,* 422 U.S. 806 (1975).

[10]*Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973)(State law requiring the court to conduct a hearing if defendant presents allegations that counsel is ineffective).

On December 26, 2005, Petitioner delivered to correctional officials a second State petition for writ of habeas corpus. Exh. 9. The December 26 petition alleged that appellate counsel was ineffective for: (1) failing to raise fundamental error by the trial court for refusing to appoint conflict-free counsel; (2) fundamental error by the trial court for not allowing Petitioner to represent himself at trial, and appellate counsel's failure to fully investigate this issue for direct appeal. *Id*. at 2. On February 14, 2006, the State appellate court denied Petitioner's December 26 petition without opinion. Exh. 10.

The Court finds that Grounds 10, 11 and 12 are exhausted because arguably Petitioner fairly presented his three ineffective assistance of appellate counsel claims to the State court.[11] *Duncan v. Henry*, 513 U.S. 364 at 365. Further, the Court deems the appellate court's summary rejection of Petitioner's claims to be an adjudication on the merits, which warrants deference by this Court. *Ferguson v. Culliver*, 527 F. 3d 1146.

Petitioner has a Sixth Amendment right to effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*,

---

[11]Respondent argues that Petitioner did not exhaust his claim that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in not discharging counsel based upon a clear conflict of interest because Petitioner "never specifically identifies the type of conflict which affected his case." Response at 22. Although raised as an exhaustion issue, Respondent is essentially challenging the factual underpinnings in support of Petitioner's substantive ineffective assistance of counsel claim.

469 U.S. 387, 396-97 (1985); *Smith v. Robbins*, 528 U.S. 259, 278 (2000).   While the Sixth Amendment guarantees the right to assistance of counsel, it does not give indigent defendants the unqualified right to the counsel of their choice.  *U.S. v. Garey*, 540 F.3d 1253, 1263-64 (11th Cir. 2008).   Thus, an indigent defendant "does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985).   Good cause requires a showing of "a fundamental problem, such as conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict."   *U.S. v. Garey*, 540 F.3d at 1263 (internal quotations and citations omitted).   Nonetheless, "a general loss of confidence or trust in counsel, standing alone, does not amount to good cause."  *U.S. v. Woodward*, 419 F. App'x 969, 970 (11th Cir. 2011)(citing *Thomas v. Wainwright*, 767 F.2d at 742).

As discussed earlier, the State court denied that appointed counsel, Mr. Sullivan, and Petitioner had a conflict of interest. *See supra*, Ground 1 at 14-17.  Thus, appellate counsel did not have a factual basis on which to raise a substantive claim that the trial court erred in failing to discharge counsel based on a

conflict of interest alleged by Petitioner in Ground 10.[12]  Thus, Petitioner has not shown that the State appellate court's decisions denying his State petitions were  contrary to clearly established federal law, or were an unreasonable application of clearly established federal law, or were  based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nor does Petitioner's *Faretta* claim or his self-representation claim fare any better.  The Supreme Court, in *Faretta v. California,* 422 U.S. 806 (1975), determined that a criminal defendant, who "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," has a right to self representation.  *Id.* at 835. Significantly, Faretta's invocation of his right to counsel was "clear and unequivocal" and was not disputed in the case. Consequently, the Court focused on whether Faretta's relinquishment of "the many traditional benefits associated with the right to counsel" was made knowingly and intelligently, as  explained below:

---

[12]Nor did appellate counsel have grounds to assert a claim of trial court error based on trial counsel's ineffectiveness. Although Petitioner expressed concern about counsel's experience, pointing out it was counsel's first murder case, Exh. 20 at 9-11, the trial court heard from both trial counsel and counsel's supervisor and determined that counsel was competent to handle Petitioner's case.  *Id*. at 12 (trial court stating that "I am going to put on the record that I can find no reasonable cause to believe that Mr. Sullivan is rendering ineffective representation to you, Mr. Guzman.  And I am making that finding at today's hearing.").

Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

In forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense. Accordingly, the judgment before us is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*Id.* at 835-36, (internal quotations, citations, and footnotes omitted).

Thus, the Court determined that a trial court's obligation to conduct a "*Faretta* hearing," at which a defendant is "made aware of the dangers and disadvantages of self-representation[,]" is triggered by the defendant's "clear and unequivocal assertion of a desire to represent himself." *See, Raulerson v. Wainwright,* 469 U.S. 966, 969-70 (1984) (Marshall, J. dissenting from denial of

certiorari). *See also*, *Stano v. Dugger,* 921 F.2d 1125, 1144 (11th Cir. 1991)( stating "[o]nce the right of self-representation has been asserted clearly and unequivocally, understandable to the trial court by the reasonable person standard, then and only then is that court, under Supreme Court and Eleventh Circuit case law, required to conduct the requisite inquiry to determine whether the criminal defendant's decision to represent himself is knowing, intelligent and voluntary."); and, *Cross v. United States,* 893 F.2d 1287, 1290 (11th Cir. 1990) (stating "[i]n recognition of the thin line that a district court must traverse in evaluating demands to proceed pro se, and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself.").

Here, the record reflects that Petitioner did not make a clear and unequivocal request to proceed *pro se*. Indeed, at the January 23, 2003 hearing, Petitioner unequivocally and repeatedly stated that he did not want to represent himself when offered the opportunity by the trial court.

> THE COURT: So what I'm going to tell you is that I'm not
> going to replace him as your attorney. That means you
> don't have the right
> to another court-appointed attorney. You do still have
> the attorney. If you wish to fire Mr. Sullivan — if you
> fire Mr. Sullivan, then you would be representing
> yourself until your family got money to hire an attorney.

THE DEFENDANT: I'm no lawyer.  I don't know much about law, but I know that I -- like I told you, I don't believe I'm getting a fair
trial.

THE COURT: Well, based on the record and everything I have in front of me, I think you're getting a very fair trial.

THE DEFENDANT: All this on the record?

THE COURT: Oh, yeah, that's what that lady here is doing. So what do you want to do?  You want to represent yourself?

THE DEFENDANT: I can't represent myself.  I don't know much about law.

THE COURT: I don't — I mean, I wouldn't advise it either. I don't think you can either.  So you're not going to fire Mr. Sullivan?

THE DEFENDANT: I want Mr. Sullivan fired.

THE COURT: Well, then you're going to have to represent yourself.

THE DEFENDANT: I wouldn't know what to do.  I ain't no lawyer.  I don't know how —

THE COURT: Well, then I don't think you want him fired, then, do you?

THE DEFENDANT: I want him fired.

THE COURT: You're going to represent yourself?

THE DEFENDANT: No, but I want him fired.

THE COURT: Okay. Well, I'm not firing him, so he's not going to get fired.  Do you understand?

THE DEFENDANT: I understand.

THE COURT: Okay. The only way he's going to get fired is if you fire him and then you represent yourself because I'm not going to
appoint another lawyer for you.  Do you understand that?

THE DEFENDANT: I understand.

THE COURT: So what are you going to do?

THE DEFENDANT: I want him fired.

THE COURT: You're not listening to me.  That's not an
option. Apparently you don't understand me[.]  Or do you?

THE DEFENDANT: I understand you clearly.

THE COURT: Okay. What do you want to do?

THE DEFENDANT: I don't want Sullivan on my case.

THE COURT: You going to represent yourself?

THE DEFENDANT: No.

MR. SULLIVAN: Those are your only two choices.

THE COURT: Your choice isn't a choice.  That's not one of
the options.  There's A and B, and you're picking C.
There isn't any C.  Okay.  Either he stays on the case or
you fire him and represent yourself; that's two choices.
You don't get a third choice.  So what do you want to do?
You've got to decide now.

THE DEFENDANT: I done already said what I wanted.

THE COURT: Okay.  And what is that?

THE DEFENDANT: I want Sullivan fired.

THE COURT: Okay. Well, that's not an option because you
don't want to represent yourself, right?

THE DEFENDANT: You're right.

Exh. 20 at 12-16.

Again, appellate counsel did not have a factual basis to
advance either a claim that the trial court erred in failing to
conduct a *Faretta* hearing or a claim that Petitioner had a right to

-39-

represent himself at trial. Indeed, if appellate counsel is not required to raise all nonfrivolous issues on appeal, *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983), appellate counsel certainly is not deficient for failing to raise nonmeritorous issues. Consequently, the Court finds that the State post conviction court's decision was not contrary to clearly established federal law, or was not an unreasonable application of clearly established federal law, or was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, Grounds 10, 11 and 12 are denied as without merit.

**Ground 13**

Petitioner contends that his life sentence violates *Apprendi*. In support, Petitioner states that he was found guilty of "second degree murder" but "the jury made no finding about the use of a firearm." Petition at 9. Thus, Petitioner claims that the State court incorrectly sentenced him to life. *Id*. Additionally, Petitioner submits that the Supreme Court in *Apprendi* "said a jury must still be told the punishment that could be imposed" upon a defendant. *Id*. Consequently, Petitioner claims that the trial court committed error because the trial court told the jury "to disregard [the] consequences of a verdict," in response to the jury's question about punishment. *Id*.

Assuming *arguendo* this claim was exhausted and as noted *supra*,[13] contrary to Petitioner's assertions, the jury did expressly find that Petitioner committed the murder with a firearm. Thus, the factual foundation on which Petitioner's claim is based is erroneous. Further, because Guzman's life sentence for second degree murder, which is a first degree felony in Florida,[14] was enhanced to a life felony due to Guzman's use of a firearm, pursuant to Florida Statute § 775.087(2)(a)3, did not exceed the statutory maximum of life imprisonment, there can be no *Apprendi* error. *See Jewell v. Crosby*, 142 F. App'x 371, 373 (11th Cir. 2005). Finally, Petitioner's reading of the holding in *Apprendi* is erroneous. Consequently, the aforementioned claim is contradicted by the record and denied as without merit.

**Ground 14**

As noted *supra*,[15] as a precaution the Court construes the *pro se* Petition as raising an additional claim that was not addressed by Respondent. In particular, Petitioner identifies in his list of trial counsel's errors, a claim that counsel was ineffective for

---

[13]The record does not reflect that Petitioner either filed a Rule 3.800 motion, challenging his sentence as illegal; or, that Petitioner raised on direct appeal a claim of trial court error concerning either his sentencing or comments by the trial court in response to the jury question. The Court previously discussed herein the *Apprendi* issue in the context of Petitioner's ineffective assistance of trial counsel claim at 27-28.

[14]*See* Florida Statute § 782.04; Exh. 21 Vol. I at 8.

[15]*See* footnote 4.

"failing to object to improper comments made by a prosecutor in closing arguments." Petition at 5. Petitioner states that during closing, the prosecutor "basically told the jury that petitioner's testimony was all false and inconsistent with [his] pretrial statements." *Id*. Petitioner argues that "if such was true," the prosecutor could have sought to impeach him. *Id*.

Upon review of the record, the Court finds that Petitioner failed to properly exhaust this claim of trial counsel's ineffectiveness. In particular, Petitioner initially raised thirteen separate grounds of trial court error in his Rule 3.850 motion, which he filed on April 19, 2005. See generally Exh. 11. A claim that counsel was ineffective for failing to object to the prosecutor's alleged misconduct during closing argument was not raised by Petition in his initial Rule 3.850 motion. *See generally Id*. On January 18, 2007, Petitioner placed in correctional mailing an amended Rule 3.850 motion. Exh. 14. Petitioner's proposed amended Rule 3.850 motion contained a new claim -- that trial counsel was ineffective for failing to object to the prosecutors remarks during closing -- which was not included in Petitioner's initial Rule 3.850 motion. *Compare* Exh. 11 with Exh. 14. On August 28, 2007, the post conviction court denied Petitioner's amended Rule 3.850 motion as untimely filed outside of the two-year time period, *citing Lanier v. State*, 826 So. 2d 460 (Fla. 1st DCA 2002). Exh. 15. Petitioner appealed the denial of

-42-

his amended Rule 3.850 motion at the time he appealed the summary denial of his initial Rule 3.850 motion, which was issued the same day. Exh. 16. The appellate court *per curiam* affirmed the trial court's denial of Petitioner's initial and amended Rule 3.850 claims. Exh. 17.

Because the last State court rendering a decision found that Petitioner's amended Rule 3.850 motion, which raised this claim, was untimely, Ground 14 is not subject to review by this Court and is procedurally barred. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). Petitioner does not allege, yet alone demonstrate, cause and prejudice to excuse this procedural bar. Further, in light of the evidence submitted to the jury and a review of the transcript of the trial, Petitioner cannot demonstrate a fundamental miscarriage of justice. Thus, the Court dismisses Ground 14 as procedurally barred.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth herein.

2. The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and, close this file.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S.  180, 129 S. Ct. 1481, 1485 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 16th day of September, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: hmk
Copies: All Parties of Record